UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

NORTON CLEARWATER LIMITED
PARTNERSHIP a/k/a NORTON
APARTMENTS,

        Debtor.
_____/

Chapter 11

Case No. 8:10-bk-10989-KRM

## CHAPTER 11 CASE MANAGEMENT SUMMARY

NORTON CLEARWATER LIMITED PARTNERSHIP (the "**Debtor**"), by and through its undersigned attorneys and pursuant to Administrative Order FLMB-2009-1, hereby files its Chapter 11 Case Management Summary (the "**Summary**"). For its Summary, the Debtor states the following:

### INTRODUCTION

On May 7, 2010 (the "**Petition Date**"), the Debtor filed its Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtor is operating its business and managing its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

### CASE MANAGEMENT ITEMS

I. **Description of the Debtors' Business**

The Debtor is the owner of an apartment complex located at 1450 Martin Luther King Jr. Avenue, Clearwater, Florida (the "**Complex**"). The Complex occupies nearly 4 acres and consists of 6 one and two story buildings with a total of 48 units comprised of 8 one bedroom/one bath units, 18 two bedroom/one bath units, 16 three bedroom/one and

a half bath units, and 6 four bedroom/two bath units. Amenities include laundry facilities and a community room.

The Complex has a contract with the U.S. Department of Housing and Urban Development ("**HUD**") pursuant to which it is required to rent all of the units to individuals who receive Section 8 HAP (Housing Assistance Payment) voucher assistance. In accordance with the Section 8 HAP program, HUD pays a portion of the tenants' rent based on two primary factors: income and the size of the household. The tenants pay the remainder of the rent which is not paid by HUD.

II.  **Location of Debtors' Operations and Whether Leased or Owned**

The Complex is located at 1450 Martin Luther King Jr. Avenue, Clearwater, Florida where the office of the on-site manager is maintained. The Debtor owns fee simple title to the Complex.

III. **Reasons for Filing Chapter 11**

The Debtor acquired its interest in the Complex in April 2000 using the purchase money financing described hereafter and equity contributions to fund the closing. In addition, the Debtor has made capital improvements to the Complex in excess of $106,475, including roof repairs and the purchase of new appliances, floor coverings, cabinets, and window coverings. Although the improvements, the location, and the floor plans make the Complex a desirable living location for individuals who receive Section 8 HAP voucher assistance, the current market conditions have adversely impacted occupancy rates. The following specific factors caused a reduction in the Debtor's cash flow: (i) the Clearwater unemployment rate increasing to just below 4.2% resulting in substantial increase in tenant evictions; and (ii) large flood of rental supply resulting from

failed condominium projects reverting back to rentals and putting downward pressure on occupancy rates, and upward pressure on concessions.

The Chapter 11 was necessary to allow the Debtor to restructure its debts to fairly deal with all creditors and to permit it to complete the improvements. The Debtor believes that the continuation of its current business plan will result in a significant increase in the leasability of the refurbished units, the marketability of the project, and the value of the estate and the Lender's collateral.

IV. **List of Officers and Directors and Their Salaries and Benefits at Time of Filing and During the One Year Prior to Filing**

The Debtor is a Florida limited partnership. The Debtor's manager is Ronald L. Glas. Ronald L. Glas did not receive a salary or benefits during the one year prior to the Petition Date, and none of the officers or directors received any payments from the Debtor during such time. A related entity, Barfield Bay Properties, Inc. received management fees totaling $19,815.67 in the twelve months immediately preceding the Petition Date.

V. **Debtors' Annual Gross Revenues**

For the year ended December 31, 2009, the Debtor's total income was approximately $493,406.

VI. **Amounts Owed to Various Classes of Creditors**

**Secured Claims**:

In March 2007, the Debtor, as borrower, executed that certain Promissory Note, Term Loan Agreement and Mortgage, Security Agreement and Assignment of Rents (collectively, the "**Loan Documents**"), in the original principal amount of $2,250,000 in favor of Imperial Capital Bank. Pursuant to the Loan Documents, it appears that the

Debtor may have granted to the holder of the Loan Documents a mortgage on and security interests in the Complex, lease and rent payments, and the proceeds thereof (collectively, the "**Collateral**"). As of the Petition Date, the Debtor estimates that it owes the holder of the Loan Documents approximately $2,171,280 under the Loan Documents. The real estate taxes for 2008 and 2009 are due in the total amount of $90,692.

**Priority Claims**:

The Debtor is unaware of any priority claims.

**Unsecured Claims**:

The Debtor believes that its trade payables are in the approximate amount of $18,720.

VII. **General Description and Approximate Value of the Debtors' Current and Fixed Assets**

The Debtor's assets consist primarily of the real property and related fixtures comprising the Complex and the rental lease income. The Complex has a tax assessed value of $1,825,000.

VIII. **Number of Employees and Amount of Wages Owed as of Petition Date**

As of the Petition Date, two people were employed on site at the Complex. The Debtor funds payroll for the employees through a management company as a direct pass through, although the Debtor is responsible for the wages. As of the Petition Date, wages and other related amounts earned, but not yet due and payable, were in the approximate amount of $2,300.71.

IX. **Status of Debtors' Payroll and Sales Tax Obligations**

All payroll and sales tax obligations have been paid, other than the taxes associated with the prior payroll period.

X. **Anticipated Emergency Relief Within 14 Days of Petition Date**

The Debtor has filed or anticipates filing the following motions requesting emergency relief within 14 days of the Petition Date:

1. Application to employ Stichter, Riedel, Blain & Prosser, P.A. as counsel;

2. Motion to use cash collateral;

3. Motion to prohibit utility companies from terminating, altering, or refusing service;

4. Motion to pay pre-petition wages; and

5. Motion to approve the return of tenant deposits in the ordinary course of business.

WHEREFORE, the Debtor respectfully submits the information contained herein as its Case Management Summary.

DATED: May 11, 2010

/s/ Amy Denton Harris
Scott A. Stichter
Florida Bar No. 710679
sstichter@srbp.com
Amy Denton Harris
Florida Bar No. 634506
aharris@srbp.com
STICHTER, RIEDEL, BLAIN
  & PROSSER, P.A.
110 Madison Street - Suite 200
Tampa, Florida 33602
(813) 229-0144
(813) 229-1811 FAX
ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing DEBTOR'S CHAPTER 11 CASE MANAGEMENT SUMMARY has been furnished by the Court's CM/ECF system or U.S. MAIL to **Office of the U.S. Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602, on May 11, 2010.

/s/ Amy Denton Harris
Amy Denton Harris